IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

SYMEON PETKOPOULOS,

   Plaintiff,

 v.          Civil Action No.
             5:17-CV-0930 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

---

APPEARANCES:      OF COUNSEL:

FOR PLAINTIFF:

CARROLL & CARROLL LAWYERS, P.C. WOODRUFF L. CARROLL, ESQ.
600 East Genesee Street
Suite 108
Syracuse, NY 13202

FOR DEFENDANT:

HON. GRANT C. JAQUITH    FERGUS J. KAISER, ESQ.
United States Attorney     Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on June 6, 2018, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: June 12, 2018
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SYMEON PETKOPOULOS,

                                        Plaintiff,

vs.                                     5:17-CV-930

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

        Transcript of a **Decision** on June 6, 2018, at the
James Hanley Federal Building, 100 South Clinton Street,
Syracuse, New York, the Honorable David E. Peebles,
United States Magistrate Judge, Presiding.

                        A P P E A R A N C E S:

For the Plaintiff:
(By telephone)

        CARROLL & CARROLL LAWYERS, P.C.
        600 East Genesee Street
        Suite 108
        Syracuse, New York 13202
        BY:  **WOODRUFF LEE CARROLL, ESQ.**

For the Defendant:
(By telephone)

        SOCIAL SECURITY ADMINISTRATION
        26 Federal Plaza
        Room 3904
        New York, New York 10278
        BY:  **SIXTINA FERNANDEZ, ESQ.**


                    *Hannah F. Cavanaugh*
            *Official United States Court Reporter*
                  *100 South Clinton Street*
                *Syracuse, New York 13261-7367*
                       *(315) 234-8545*

1                (Time noted:  11:37 a.m.)

2                THE COURT:  All right.  So I have before me a request

3   for judicial review of an adverse determination by the Acting

4   Commissioner pursuant to 42, United States Code, Section 405(g).

5                The background is as follows:  The plaintiff was born

6   on August -- in August of 1985.  He is currently 32 years of

7   age.  He is 5'11" in height and weighs 150 pounds, or did at the

8   time of the hearing.  He's right-hand dominant.  Plaintiff lives

9   alone in Syracuse with a dog in a two-level house.  That's at 38

10  and 630 of the Administrative Transcript.  He is single.

11               He has an 8th grade -- he attended school through 8th

12  grade and has a GED.  He was in special education classes for

13  math and reading, but testified or stated that he has no

14  problems with reading or math.  That's at 630 of the

15  Administrative Transcript.

16               He has a driver's license and testified at page 39

17  that he has no problem driving, and that is as of the date of

18  the hearing.  He drove himself home from the hospital on

19  November 7, 2016.  That's at Docket No. 8-1, page 125, I

20  believe.  He claims that he is able to drive, that's at 625, and

21  he drove to the hearing, that's at 39.

22               Plaintiff has been diagnosed -- was diagnosed in or

23  around 2009 as suffering from multiple sclerosis or MS.  For

24  that, he sees Dr. Burk Jubelt at Upstate Medical Center in

25  Syracuse every six months because of his right side weakness for

1  which he uses a cane and he experiences gait issues.

2  He also has some vision issues, including nystagmus
3  and blurring.  He experiences pain in his lower back, his right
4  knee and right hip, and has balance issues.  He has been
5  prescribed Tysabri infusions, Lioresal, Klonopin, and Celexa.
6  Plaintiff also suffers from depression and anxiety, but has not
7  undergone any significant specialized treatment for those
8  conditions.

9  Plaintiff works occasionally, and has in the past,
10 helping his father at the family-owned pizza and submarine
11 shop/restaurant.  His title was restaurant manager.  At page 37,
12 he indicated he works 24 hours a week, as needed, 4:00 to
13 midnight.  That's at 49.  As of November of 2016, he was still
14 working three days a week.  That's at Docket No. 8-1 at page
15 126.

16 Plaintiff smokes daily, including cigarettes and
17 marijuana.  That's at page 44.  In terms of daily activities,
18 plaintiff watches television, showers, plays with his dog, makes
19 food, does chores, tries to work out, goes to the laundromat,
20 uses computers, and socializes with friends.  That's at 43 and
21 44 and page 625 of the Administrative Transcript.

22 Procedurally, plaintiff applied for Title 2
23 disability benefits on December 27, 2013, alleging an onset date
24 of July 22, 2009.  On December 2, 2015, a hearing was conducted
25 by Administrative Law Judge David Begley.  ALJ Begley issued a

1  decision on January 22, 2016, that was unfavorable to the
2  plaintiff.  That became a final determination of the agency on
3  June 23, 2017, when the Social Security Administration Appeals
4  Council denied plaintiff's request for a review.
5           In his decision, ALJ Begley applied the familiar
6  five-step test for determining disability.  At step one, he
7  concluded that despite plaintiff's testimony about working, he
8  had not engaged in substantial gainful activity, as that term is
9  defined, since July 22, 2009.
10          At step two, he concluded that plaintiff suffers from
11 severe impairments, including MS, depression, and anxiety.
12          At step three, he concluded that those did not meet
13 or medically equal any of the listed presumptively disabling
14 conditions.  He considered the listing associated with MS as at
15 listing 11.00, et. seq.  He also considered 12.04 and 12.06
16 concerning the mental impairments and found that neither the B,
17 nor the C, criteria were met under those listings.  After
18 surveying the medical evidence, the -- and other evidence before
19 him, ALJ Begley concluded that plaintiff retains the RFC to
20 perform sedentary work with exceptions including prohibited from
21 climbing ladders, ropes, and scaffolds, limited to occasional
22 climbing of ramps and stairs, balancing, stooping, kneeling,
23 crouching, and crawling.  Also, he would need to avoid slippery
24 and uneven surfaces, as well as hazardous machinery, unprotected
25 heights, and open flames.

1           He went on to address the mental condition by adding
2  the further limitations that plaintiff do only simple routine
3  repetitive tasks and work in a slow stress job, defined as
4  having no fixed production quotas, no hazardous conditions, only
5  occasional decisionmaking required, and only occasional changes
6  in the work setting, and finally, he would need a handheld
7  assistive device to ambulate.
8           Applying that RFC, the ALJ concluded that plaintiff
9  could not perform his past relevant work as a restaurant
10 manager, and at step five, noted that if the medical vocational
11 guidelines or the grids were to be applied, Rule 201.28 would
12 direct a non -- a no disability finding.  He concluded, however,
13 that the job based on which the grids are predicated was eroded
14 by the additional nonexertional limitations.
15          Eliciting the opinions of a vocational expert, the
16 ALJ concluded that plaintiff can perform jobs in the national
17 economy including a charge account clerk, phone order clerk, and
18 addresser.
19          As you know, my task is limited.  I must make a
20 review of the Commissioner's determination using a deferential
21 standard and determining whether, A, correct legal practices
22 were applied and, B, the determination is supported by
23 substantial evidence.
24          The relevant period, of course, is July 22, 2009, to
25 January 22, 2016.  It is unfortunate that the plaintiff suffers

1  from a debilitating disease and he may well be disabled
2  currently, but the relevant time period, again, only extends to
3  January 22, 2016.
4           The plaintiff raised an issue concerning development
5  of the record.  The Commissioner's regulations do require
6  development of a record, including a claimant's complete medical
7  history for at least 12 months prior to the filing of an
8  application for benefits and longer, if necessary, to reach an
9  informed decision.  Of course, that obligation exists regardless
10 of whether the claimant is represented by counsel, which is the
11 case in this situation.  The duty is particularly acute where
12 there are gaps in information from a claimant's treating
13 physician.
14          In this case, I find no failure to develop the record
15 and comply with this obligation.  It's clear that the
16 Commissioner had records at least to November 4, 2015.  That's
17 at 714 to 722.  There was a -- that record, of course, we
18 discussed, was an emergency room visit concerning falling due to
19 weakness.  And at 721, it appears that the primary situation in
20 that regard was an upper respiratory infection.  That's at 721.
21          The updated records that were submitted to the Court
22 don't show any records from Dr. Jubelt prior to February 4,
23 2016 -- that's at 101 of Docket No. 8-1, I believe -- so that it
24 doesn't appear that there was any failure to develop the record
25 that would have yielded additional pertinent records from the

```
 1   time period in question.
 2           The step two argument concerning vision and visual
 3   acuity in this -- in this regard, it appears that the visual
 4   acuity was not sufficiently severe at step two.  Of course, the
 5   plaintiff bears the burden of demonstrating a condition that
 6   will significantly limit the ability to perform basic work
 7   functions.  There's no evidence that suggests that that was the
 8   case.  And even if, as the Commissioner argues, there was an
 9   error and that visual acuity/visual limitation should have been
10   included as severe at step two, that's harmless because the
11   sequential evaluation continued and vision was very much an
12   issue that was addressed by the Administrative Law Judge.
13           The ALJ, in determining and rejecting the vision as a
14   significant impairment, properly relied on -- in part, on Dr.
15   Lorensen.  Dr. Lorensen addressed vision and found at page 626,
16   in the right eye 20/20, left eye 20/70, and both 20/20 on a
17   Snellen chart at 20 feet with glasses.  It was also -- Dr.
18   Jubelt was relied on to some degree concerning vision.
19           The RFC is supported by Dr. Lorensen, by some of Dr.
20   Jubelt, by plaintiff's own testimony, and Dr. Fisher's
21   testimony, and the account of his daily activities.  Dr.
22   Jubelt's records, on many occasions, reflect good visual acuity.
23   That's at 292, 284, 296, and 447.  Dr. Jubelt also noted no
24   nystagmus at 462, 647, 684, and 688.  There was also mild
25   blurring noted on August 15, 2014, if I'm reading my notes
```

```
 1   correctly, but that was cured with an increase in Klonopin.
 2              The plaintiff testified that he can sit without
 3   problems and stand for two hours.  That's at 47.  The sitting,
 4   he testified at 48 and it's also at 236 and 638.  He can lift
 5   20 pounds.  That's at 48 and 637.  The reaching was an issue
 6   that I looked at, and the Administrative Law Judge discussed the
 7   restrictions on reaching from Dr. Lorensen and Dr. Jubelt and
 8   explained why it was not consistent with evidence in the record,
 9   including plaintiff's own account of his daily activities.
10              Mentally, Dr. Fisher noted that while attention and
11   concentration were mildly limited, memory skills were in tact,
12   631 and 632.  And as the ALJ noted, plaintiff hadn't undergone
13   any significant mental health treatment other than being on
14   Celexa.
15              Listing 11.09 was an issue that I looked at.  The
16   regulations that were in effect at the time require one of three
17   parts be met, disorganization of motor function, visual or
18   mental impairment as described in the regulations or the
19   listings, and significant reproducible fatigue and motor
20   function.  It's 11.04B when it comes to motor
21   function/disorganization, requires a showing of significant and
22   persistent disorganization of motor function in two extremities
23   resulting in sustained disturbance of gross and dexterous
24   movements or gait and station.
25              That -- and clearly, the Administrative Law Judge
```

1  could have elaborated more on his reason for rejecting the
2  listing, but nonetheless, I find that it is supported by
3  substantial evidence.
4          Turning to vision, 2.02, 2.03, and 2.04, require
5  specific findings that were not met in this case. And for the
6  same reason, part C is not met. There's no medical evidence
7  that -- from any source, treating or otherwise, that shows that
8  11.09C concerning significant reproducible fatigue and motor
9  function with substantial muscle weakness on repetitive
10 activity, as demonstrated on physical examination, resulting
11 from neurological dysfunction in areas of the central nervous
12 system are -- exist.
13         So I conclude that, again, while I would've preferred
14 to see a more robust analysis of listing 11.09, I find that
15 his -- the ALJ's rejection of that listing is supported by
16 substantial evidence. Clearly, there is conflicting evidence --
17 medical evidence in this case. It's for the Administrative Law
18 Judge to weigh that evidence and the Court should disturb the
19 outcome of that weighing only if no reasonable factfinder could
20 adopt the position adopted by the Administrative Law Judge. And
21 it's, again, plaintiff's burden at all steps through step four
22 of the sequential analysis to demonstrate disability.
23         I find that the rejection is supported by substantial
24 evidence. In terms of treating source, portions of Dr. Jubelt's
25 medical source statement was rejected, as I indicated

1  previously.  I find that that was properly explained and -- at
2  17 and 18 of the Administrative Transcript, and that the
3  rejection is supported by substantial evidence.
4          At step five, the burden shifts to the Commissioner.
5  A hypothetical was posed to a vocational expert tracking the
6  residual functional capacity finding of the ALJ.  The vocational
7  expert testified to the existence of three jobs in the national
8  economy that plaintiff is capable of performing notwithstanding
9  his limitations.  That satisfies the Commissioner's burden at
10 step five.
11         So in conclusion, I find that the determination is
12 supported by substantial evidence and I will award judgment on
13 the pleadings to the defendant affirming the Commissioner's
14 determination.  Thank you both for excellent presentations.
15 Have a great day.
16         MS. FERNANDEZ:  Thank you, your Honor.
17         MR. CARROLL:  Thank you, your Honor.
18         (Time noted:  11:54 a.m.)
19
20
21
22
23
24
25

## CERTIFICATE OF OFFICIAL REPORTER

I, HANNAH F. CAVANAUGH, Official Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 11th day of June, 2018.

/S/ HANNAH F. CAVANAUGH_____

HANNAH F. CAVANAUGH

Official U.S. Court Reporter